(Opinion published 52 N. W. Rep. 393.)

---

WILLIAM C. SHERWOOD *vs.* ROBERT L. WILKINS.

Argued by appellant and submitted on brief by respondent, April 25, 1892. Decided June 10, 1892.

**Principal and Agent.**

Where one who has contracted for the purchase of land as the real party in interest caused the contract therefor to be made in the name of his clerk or agent, *held* that, to be entitled to the benefits of the contract, he must also be bound by the conditions and stipulations of the parties, made by his consent and direction, touching the terms and mode of performance thereof.

**Contract Waived, whereby Covenants in a Deed were Revived.**

And where, in pursuance of such contract, a deed with full covenants was given of lands incumbered by judgments, which the vendor was bound, under the terms of a special contract, to cancel on or before a certain date, and, in case he did not do so, it became the duty of the vendee to apply unpaid purchase money to the satisfaction thereof, before the time of redemption should expire after sale upon execution issued on such judgments, *held*, that the parties might waive the stipulation in reference to redemption by the vendee, and, if they did do so, the covenants in the deed would become operative, and an action would lie thereon by the vendee for damages if the title to the land was lost through the failure of the vendor to satisfy the judgments or make redemption.

Appeal by defendant, Robert L. Wilkins, from a judgment of the District Court of St. Louis County, *Stearns*, J., entered June 3, 1891, against him for $7,684.78.

On December 15, 1888, defendant owned Lot 38 on West First street in Duluth Proper, First Division; and made a contract with the plaintiff, William C. Sherwood, whereby Sherwood agreed to purchase, and defendant agreed to sell, the lot for $12,000, payable $4,000 in hand and $2,666.66 more each year for three years thereafter, with interest annually at the rate of eight per cent. a year, to be secured by a mortgage on the property. Sherwood paid the $4,000, and at his request, Wilkins deeded the lot to Carroll M. Mauseau, who was a clerk in Sherwood's office, and had no actual interest in the purchase. The deed contained covenants of seisin, against incumbrances, and warranty. Mauseau executed the notes for the residue of the purchase money and a mortgage to Wilkins on the lot securing their payment. Wilkins and Mauseau at the same time made the contract stated in the opinion. Wilkins bought the lot of James Austin. Before Austin's deed to Wilkins was recorded, two judgments were recovered against Austin and docketed in St. Louis county, one in favor of Hutchins Bevier for $1,044.58 and the other in favor of Henry H. Bell for $1,142.79, and the lot was sold in November, 1888, by the sheriff to Bevier to pay these judgments, subject to redemption within a year from the sale. Wilkins sought to avoid the lien of these judgments, and the certificate of sale, but failed to accomplish it. See *Wilkins* v. *Bevier*, 43 Minn. 213.

On October 28, 1889, Wilkins wrote Sherwood: "If you pay Bevier, you must do it out of your own pocket, not out of mine."

*James Spencer*, for appellant.

*Wm. B. Phelps*, for respondent.

VANDERBURGH, J. The plaintiff agreed to purchase the lot in controversy of the defendant at the agreed price of $12,000, and on the 15th day of December, 1888, defendant, at the instance of the plaintiff, conveyed the same by deed with full covenants and warranty to one Mauseau, who it was mutually understood took the same in trust for plaintiff. At that date the plaintiff paid the sum of

$4,000 in cash, and caused Mauseau to execute his notes for one, two, and three years, for the balance of the purchase price, secured by mortgage on the lot. The notes were indorsed by the plaintiff, and a contemporaneous contract was entered into between Mauseau and defendant, which recited the existence of certain judgment liens upon the lot, and to satisfy which it was liable to be sold on execution, and that the defendant desired the same should remain uncanceled, to give him an opportunity to remove the same. It was therefore mutually agreed by the parties to the contract that the defendant should assume the payment of the judgments and all costs incurred by reason thereof, and he would cause the same to be canceled at least thirty days before the time of redemption from any sale made to satisfy the same; and to protect the plaintiff he would deposit the notes above mentioned, and the mortgage securing the same, with the Merchants' National Bank, "in escrow, for the following purpose: That, should the said second party fail to remove the said judgment liens from the records, so that they shall cease to be liens or incumbrances on the title to said lot, as has been above agreed, then, and in that case, the said party of the first part shall pay the same, and protect himself, his heirs, or assigns in the title to said lot as against such judgment liens; and upon the presentation of the proper receipts for any and all sum or sums of money so paid by said first party as aforesaid to the said Merchants' National Bank, the said bank is authorized and instructed to indorse the amount so paid on the notes above mentioned, as part payment thereof. And it is further understood and agreed that the said bank shall hold the said notes and mortgages and the proceeds thereof until each and all of the liens, incumbrances, or clouds that are in existence at the present time, as aforesaid, shall be fully and absolutely removed, paid, or released, and the title to said lot shall be without cloud of existence prior to this date. And it is further understood and agreed that the said party of the first part shall not be required to pay any of the said notes until the said judgments shall have been removed as hereinbefore provided."

It is found by the court that Mauseau was simply acting as the agent and in the interest of the plaintiff, who furnished the money

to make the full payment of $4,000 upon the lot; and on the 15th day of August, 1889, Mauseau conveyed the lot to plaintiff by deed, also with full covenants and general warranty.

In May and June, 1888, two judgments of upwards of $1,000 each were recovered against the grantor of defendant, which became and were liens on the lot when he conveyed the same to plaintiff's grantor.

Executions were issued, and the property was sold on each of the judgments, and one Bevier became the owner of each of the certificates of sale; and it was duly adjudged in an action wherein the defendant was plaintiff and the holders of the certificates of sale were defendants that the judgments and execution sales were valid. No redemption was made therefrom. But after the time for redemption had expired the holder of the certificates of sale brought an action against both the plaintiff and the defendant herein, in which such proceedings were had that final judgment was recovered by the plaintiff therein, and by which it was adjudged and determined that the plaintiff in that action was the owner of the lot in controversy, and barring all right, title, claim, or interest of this plaintiff therein.

It is also found by the court that an additional payment had been made by plaintiff as part of the consideration of the purchase prior to August 15, 1889, making in all the sum of $6,650 paid at that date; and there is evidence sufficient to support this finding. And the record also shows that the plaintiff has been evicted from the possession of the premises, and there has therefore been a breach of the covenant of warranty in the defendant's deed.

The only questions of importance to be considered in the case grow out of the contract above referred to, providing for the redemption from the execution sales out of the purchase money secured by the mortgage and notes left in escrow with the bank. We are of the opinion that the agreement was obligatory on the plaintiff. Mauseau was acting as trustee for plaintiff. The trust was executed, and the mortgage and notes indorsed by plaintiff had been deposited with his consent and by his direction, and the agreement made for him; and when he stepped into Mauseau's shoes he became bound by the obligations, as well as entitled to the benefits of the arrangement, treated as one entire transaction. He could not neglect to

comply with the provisions for redemption made in the contract, and afterwards sue upon the covenants, because it was not made as therein provided. The securities were deposited in order to protect the plaintiff's right to redeem, and save the property in case defendant failed to do so; and it was plaintiff's duty, by the terms of the contract, to apply seasonably such part of the unpaid purchase money as might be necessary to satisfy the claims of the execution creditors before the redemption expired. Neither party redeemed, and the property has been lost to the plaintiff. Which party must bear the loss? The plaintiff claims that he is entitled to recover back that part of the purchase price which he paid, and the defendant answers that plaintiff lost the lot through his own default in not redeeming as the contract required. On the other hand, the plaintiff claims that the defendant waived and repudiated the provisions of the contract, and that it is his own fault and folly that the redemption was not made; and upon this question the court finds that prior to the expiration of the time of redemption the plaintiff offered to redeem, but this defendant notified him not to do so, and refused to credit plaintiff with any funds paid on account thereof, and repudiated the provisions of the contract made with Mauseau, touching the redemption. The evidence fully sustains this finding. It seems a litigation was in progress between the defendant and the holder of the certificates of the execution sales, which the defendant hoped and believed would terminate favorably to him, and he therefore elected not to have the redemption money paid over to such holder, but took the risk and responsibility of managing the matter himself. It is true the plaintiff was not obliged to comply with defendant's directions, and might still have exercised his right to redeem under the contract. At the same time it was competent for the parties to waive or abandon compliance with the conditions therein. The mutual consent to do so need not be by express words, being equally valid if implied. It is sufficiently implied where, while the contract remains executory, both parties discard it; and this the evidence in the case tends to show. Bish. Cont. § 812 *et seq.; Wheeden* v. *Fiske,* 50 N. H. 125; *De Bernardy* v. *Harding,* 8 Exch. 822; *Ford* v. *Smith,* 25 Ga. 679; *Parmly* v. *Buckley,* 103 Ill.

119. So, also, the plaintiff might have interposed independently of the contract, and had the consideration money unpaid applied to the redemption; but his failure to do so did not relieve the defendant from liability upon the covenants in his deed.

Upon the defendant, apart from the contract, rested the superior obligation and duty to assume and pay off the prior liens upon the land, and when he waived the express provisions in the special contract touching the matter his liability became absolute and unquestioned.

The plaintiff, having lost the land because of the outstanding paramount title, is entitled to recover the amount of the consideration actually paid, with interest.

Judgment affirmed.